May it please the Court. My name is Jim Ball. I represent Mr. Molesworth who represented himself pro se at the trial proceedings. I plan on, just to give the Court a background on the issues I plan to present, is I'm going to plan on presenting the issues that the Court directed in the July 10th order, and the other issues I plan on presenting are, once I'm through with that, is on the Court's application of the sentencing guidelines. In regards to the first issue, the Court asked me to take a look at whether Mr. Molesworth's inability to pay the fine was a permissible issue. I submit to the Court that it was not a permissible issue. I submitted a 28-J letter over the weekend when I did the research for the Court, and I hope the Court has gotten that. But in regards to that, I would argue that under 5H1.1 of the sentencing guidelines, that that is one of the forbidden factors that has been used in the case law. Socioeconomic status is a factor that should not be present, at least used as part of sentencing. So in regards to the sentencing guidelines, that has been, I think, pretty sufficiently laid out that that is a forbidden factor. There are some case law in regards to this issue. I was surprised to find that there wasn't a lot of case law on this, but there is Supreme Court case law that I did represent to the Court, Williams v. Illinois, Tate v. Short, which was brought up through the Ninth Circuit in the DuBose case. Mainly, that case law and the case law that follows that essentially says that economic status or the inability to pay a fine should not be used in increasing someone's sentence. So in regards to that one issue, I think that that is an issue that is not permissible, shouldn't be made part of the sentencing scheme. In regards to whether Mr. Molesworth objected to that at sentencing, there's nothing in the record that shows that he actually objected to that. And so in regards to that issue, I don't see that that was an objection made at the sentencing court. Then you come to the issue, well, if he didn't object to that, what level of standard do we use as a plain-error standard in regards to the sentencing court using that as a part of the sentencing scheme? The plain-error standard would normally apply, correct. However, in this case, when we raised the issue in my briefs, the government did not bring that to the Court's attention or objected to it in its briefing schedule to the Court. So according to the Ninth Circuit, the court card case that I put forth to the Court in my 28-J letter. Roberts. You're mumbling now, and I'm missing you. You slow down a little bit. Take a drink of water and slow down. I understand the excitement of a tax case, Judge, so I'm trying to get through this as much as possible. Okay. In regards to the plain-error analysis, Judge, normally, yes, the plain-error analysis applies because it was not objected to at the sentencing. However, in this case, the government did not object to that in its briefing. And so the court card case, the Ninth Circuit case from 2005, essentially says that that issue is now preserved because the government did not object to it. I understand by looking at the case law that the government can still raise an oral argument, and the cases are kind of split. If you raise an oral argument but not briefing, can you still – is it still plain-error analysis? And knowing how astute my colleague, Wendy Olson, is, I'm sure she'll be arguing that this hasn't been waived and making the argument. I'm trying to see if I understand correctly. This issue was not raised as an issue in your opening brief, in your briefing. I'm sorry, Judge. If I made that – that's not correct. I raised it in the opening brief, correct. However, the government did not object to it. I said in your statement of issues. Well, it's part of the reasonable sentence. It's kind of like a sub-issue of the last issue, which was – that was the sentence reasonable. I don't understand what you just told me. It's either raised in your statement of issues or it's not raised in your statement of issues. Can you show me – it's on page 1 of your brief – where you've raised the issue? I guess, Judge, what I would tell you – tell the Court is that I'm looking at my page number 1, looking at number 2, paragraph number 2. I essentially indicated whether the district court erred in applying the sentencing guidelines to the facts of this case and imposed an unreasonable sentence in violation of the law. In regards to that, I guess when I put it in the brief, it was more of a sub-issue of that overlying issue of was the sentence actually reasonable. I just assumed it was an overlooked issue by you. And when you brought it up later in your argument, it was really dealing with another argument. Are you saying that you consciously wrote this this way, assuming that you would have the issue before you had dealing with the fine? Well, Judge, I can tell you exactly when I was writing the brief how that came up. When I read the sentencing – when I read the sentencing argument, I recognized the issue. However, when I – when I wrote the brief, I don't think I did a good job in submitting it to the Court and giving good legal analysis on it. So in your brief, though, you do refer to it. And I'm just a little concerned where your argument is leading us. There's a – there's no statement in the issue. I'm just concerned that it comes up in an argument. And we're saying now that the government, by failing to respond to the argument, has now obviated the clear-error rule. And I'm looking ahead that there's a lot of briefs we have in here that are pretty diffuse, and it's going to be difficult for us to not tell the government they have to respond to every possible argument in any sentence, whether it's included in the statement issues or not. Maybe that is going to be the law. But in this case, didn't they – they argued it on the merits, right? I'm sorry. I couldn't hear your question. The government did address your issue on the merits in its brief, right? I believe so. Correct. So that's what the Court-Guard case that you cited to us applies to. It says, even if Court-Guard failed to preserve the error below, the government nonetheless elected to address the merits of Court-Guard's challenge without raising the issue of waiver. In these circumstances, we conclude that the government has waived any waiver argument. And we go to the merits. Correct. But that doesn't go to the standard of review. So I think it leaves us still, even if we take that, go that far, we still review it under plain error. Correct. I see what you're saying. And that's what I was going to get into in my argument. Essentially, the argument was that the government waived it. However, if the Court decided that they didn't, I think underneath the plain error standard, that the issue, essentially one that's plain enough and obvious enough and goes to such a fundamental principle of the Constitution, that the Court should look at underneath the plain error standard, and even if it did, it would pass a plain error standard. Well, it's an expressly forbidden provision. Right. That's pretty plain. And that's the argument, Judge. That's correct. I think that underneath the Bearden v. Georgia case is that when that is such a huge issue, when you look at Gideon and all the cases that talk about injured and defendants, that the Due Process Clause and the Equal Protection Clause, I guess, looked at together, that that's such a part of our Constitution that it affects the public integrity of the judicial system. The question I have is, even if you do the plain error analysis, was there prejudice here in the sense that the judge also departed nine levels for your client? So although the judge took – I, from reading the transcript, seemed to take the fact that Mr. Molesworth couldn't pay a fine into consideration in calculating the sentence, he then – he did depart nine levels down after that. So do you really want to go back and be resentenced? I counsel people on that all the time, yes, correct. I guess the reason I would – the response I have to that is that when I looked at his transcript, the judge's transcript, the judge essentially said I would possibly would have felt I had departed even further if you could have paid for this. And I'm looking at Excerpt of Record 332. I see that. And you can see that in the first paragraph towards the end. In the second paragraph, essentially the judge says that you obviously do not have the means of paying a high fine, so I'm perfectly comfortable with 12 months and one day. But once the judge says I would have departed even further if you could have paid a fine, I'm assuming that he might be restitution also to the government. That makes me think that maybe the judge felt that he could have, just by what the record is. Of course, I wasn't there, and I can't read his mind, but that's essentially the argument, that if he is sent back, that the judge could essentially say, well, you know, since it's not permissible, it's a forbidden effect, then maybe he would go back to that. That, of course, I can't say in regards to that. And so I plan on moving on unless the Court has any more questions regarding the socioeconomic status. The second issue has to do with the guidelines, and these issues were raised in the brief. One of the issues was the – I believe the Court made error by impermissible application of the sentencing guidelines in regards to the 7206 charges. In the pre-sentence investigation, you can see that the Court used a 2S guideline and used the tax table 2F. And so the issue comes down to these 8300 forms where the pre-sentence investigator used $24,200,000-some-thousand as the loss. And so the issue is here is what I believe was the intended loss of Mr. Molesworth. The 2F guideline has now been repealed by 2B1.1 back in 2001. So there was a – when I went back and did some research, because I thought it was interesting, there was some split of authority in the circuits on how do you actually calculate this loss. And so we're looking at a 2F because it's pre-the-2001 amendment, but I recognize that there was some split in the Court's authority or the Court's in regards to how you actually calculate that. But what I guess I would argue to the Court, after being confused reading all those cases, and I think the Guidelines Commission tried to correct it, was that it comes down really to what was his intended loss. If his intended loss was unrealistic, say his intended loss was, you know, $24 million, but it was unrealistic because he could never have got that, that would be appropriate calculation. But it looks like what the cases are saying, you look at what his actual intended loss was, not what the risk of loss was, but what was he actually intending. And we argued in the brief that it was the $7,250 figure, I believe, was the exact amount in regards to what he tried to get out of the refund from his taxes. I shouldn't say refund, but a chargeback. And it's confusing because they use a lot of legalese, these constitutional lists, which we are familiar with and I know a lot. You look at this and it's not real easy to understand what they are trying to do because it makes no sense a lot of times. But what I think it boils down to is he tried to make a chargeback of $7,250 and the government responded that, I think in Ms. Olson, in her objections to the PSR, was that a correct amount could have been rounded up with a $1 million figure because that was an also a portion of money he attempted to, he said that he inserted into one of his direct treasury accounts. And so the Court used a $22 million figure. I argued in the brief that $7,250 would be more appropriate. I can see the argument where it could actually be $1,000,072.50 also, as the government brought out, now that I read her brief and understand it even more clearly than I did before. However, even if you use that $1,000,072.50, that would bring the base offense level from a 22 down to a 17, according to 2S. So in my argument to the Court, I believe that the Court miscalculated the sentencing scheme on that intentional loss factor, that the base offense level would actually have been lower at a 17. Another argument that I thought was interesting was the acceptance of responsibility. It looks to me in the district court's, not calculations, but essentially district court's sentencing, is that he adopted a pre-sentence investigator's determination that since this was a material issue and he disputed it at trial, he couldn't use an acceptance of responsibility. The case that I cited to the Court was a Cortez case, a Ninth Circuit case, where Judge Trott essentially laid out the law in that case that that's not, it's not a per se factor. So it looks like what the Court did was say, hey, okay, you had a trial, you disputed a material element, so you can't use an acceptance of responsibility. The Cortez case says that that's not correct. It's not a per se factor. There's other factors you can actually look at on whether or not you can actually grant someone an acceptance of responsibility. The application notes talk about, you can look at some of his pretrial statements that he said, some of his, anything else pretrial that he might have done to accept a responsibility. And so in this case, there was a lot of that, which was, interestingly enough, Mr. Molesworth essentially stopped the classes that he was going through, these redemption classes. Once he found out it was bogus, he went around the town of Kamii, which is a small town, and tried to, you know, show folks, hey, this is not the type of thing you want to get involved with. He heard that people were going to start passing these checks. He went around the merchants and started telling those folks that they shouldn't accept the checks from the people in those classes. He was, it looked like he was fined civilly. He paid lawyer fees and paid the civil fines, from my understanding of the record. And he also met with, I believe it was Ms. Olson, when the case was going to be filed. So there were some statements he made. But the main, and I don't want to digress, but the main issue I want to tell the Court is, it's not, it's not a permissible per se standard. If you go to trial and you contest a material issue, which he did in this case, which was the mens rea issue for the statutes. That's not a per se reason not to grant it. And so the Court essentially adopted the precepts investigator's comments on that, that he couldn't depart, or he couldn't give the acceptance of responsibility. So that's the main issue. Unless you, the Court has any questions, I'll try to wrap that up as soon as I could. Thank you, Counselor. Thank you. Good morning, Your Honors. May it please the Court, my name is Wendy Olson, and I represent the United States in this case. To answer the Court's first question posed in its July 10th order, whether the defendant's inability to pay a fine was a permissible consideration in determining the length of the prison sentence, the government believes that the answer is yes, because of the manner in which the Court considered it, if at all, in this case. First, the defendant's ability or inability to pay a fine was not a factor that the Court considered in determining the guidelines sentence and looking at the sentencing guidelines. It calculated the sentencing guidelines without any reference to this defendant's socioeconomic status. That comports with the sentencing policy statements that are set out at 28 United States Code, section 994D, which make consideration of socioeconomic status a factor that the Court is not to consider. The Court's first reference to the defendant's socioeconomic status was not to his inability to pay a fine. Rather, at page 39 of the sentencing hearing transcript, which is page 332 of the transcripts of record, the Court said he would have departed further if the defendant had been able to pay the cost of prosecution. And this is, in fact, the kind of a case where the statute authorizes, in fact, instructs the Court that it shall impose the cost of prosecution as part of the sentences imposed. The government didn't seek that in this case, nor did the Court impose it, but that's part of what the Court is to do under prosecutions under 26 U.S.C. 72061, which accounts for counts 2 through 17 of this case. I think had the Court departed downward based on this defendant's socioeconomic status, that would have been inappropriate. Or if he had departed upward, instead the Court said that he was declining to do that. In fact, took no action based on socioeconomic status, which the government submits as the appropriate thing for the Court to do. But that's not technically accurate, because he did take some action when he decided not to depart further. He made a decision not to depart further. He said, I possibly would have felt I would have departed even further. And he says if, and that sounds like it's dependent on the socioeconomic status, if there was some way that you could afford to pay the costs of litigation. But based upon what you've told the Court, there's not any way that that is reasonable or fair to you, because saying we'd have to wait forever to get the money because you have no way of paying it. So there he did make a decision not to depart further because of the inability to pay. And, Your Honor, the government's position is, had he decided to do that, the government could have objected and said, no, Your Honor, you can't consider the fact that this person had the ability to pay to depart, because that would be taking the socioeconomic status into consideration and acting in it. That's in essence what the Court did in Andrews, which I think is a Seventh Circuit case that Mr. Ball cited to the Court in the letter that he submitted yesterday and faxed to my office yesterday morning. So I was able to see it before traveling to Seattle yesterday afternoon. I'm not following you, because he doesn't say that I – if he had been willing to pay – if he had the ability to pay the costs of the litigation, then he would have had a lesser sentence. It's not that he – that's taking his economic status into account and giving him a lesser sentence. He would have had a lesser sentence if he was like everybody else and could pay the costs of the litigation. Your Honor, I respectfully disagree with how the Court is viewing those factors. Right, because I can't see – I'm not seeing what you're saying, so maybe you can explain to me. Well, Your Honor, the Court did its guidelines calculation in this case and then departed downward nine levels based on the fact that Mr. Molesworth – that there was no actual loss. There was an intended loss amount, which increased it to an offense level of 22. The Court then departed nine levels down in order to take into account that there was no actual loss. Once the Court reached that point, it did not go any further. But the question is why? Why? Well, the Court didn't go any further because, as the Court says on the record, look, if you could have paid the cost of prosecution, which is not something ordinarily under the statute, would reduce the guideline. He was saying if you – if I could fine you and you could pay the cost of litigation, then I would have – you would spend less time in jail. Yes. And then, Your Honor, the government's position is that would be error, because then you would be taking the ability to pay the fine into consideration in calculating and further reducing the guideline sentence. You would be using that as a basis to depart. He took no action based on this defendant's case. He didn't take any action because he said you don't have any money. It just seems to me that it's awfully difficult to read this and come to a conclusion other than at that particular time, whether the judge meant to say it or not, we don't know. We can't read his head. But from what he actually said on the record, he seemed to be saying if you could have paid – if you could have paid the cost of litigation, I would have further decreased and you'd spend less time in jail. But your position is that's illegal, too. Correct. So you're saying that whatever Judge Lodge wanted to do, he was constrained by the guidelines. He could not decide to depart downward by raising or imposing a fine. That's correct. The fact that he was going to – in terms of the guidelines, no. And overtly state that that was why he was departing more than nine levels. Correct. I think had he done that, that would have been error. That would have been a reason for the government to object that the departure was not reasonable. He took – I think that there is little doubt that those – that's a choice of language that Judge Lodge should not have made, that he – in talking about the cost of prosecution and that particular way. Costs of prosecution are an issue in the sentence in this case, but I don't think the case law allows him to consider it in making a downward departure. And, in fact, he ultimately did not downward depart on this basis. He did not take action based on socioeconomic status. He was going to downward depart not because of his socioeconomic status. The socioeconomic status – he was going to downward depart based on other factors in the socioeconomic status. What the socioeconomic status did was preclude him from doing what he otherwise would have done based on other factors present in the case, like, you know, the absurd – absurdity of him ever actually, you know, getting the income of $24 million. Your Honor, I think that was the first step that the – that Judge Lodge took. He departed not downward nine levels on that basis. And I think that this is a case, Your Honor, where I think Judge Lodge was looking at every possible way he could to reduce the sentence for this individual and still meet the statutory purposes of 3553A. But that's the next thing. So he did the calculation and guidelines. Then he has to also do the 3553. Correct. And I think that under 3553, his ability to pay also is not a factor. I think, Your Honor, when you look at the language that the Court used here, under 3553A, the Court – what he said, this is a one – his ability to pay a fine, natural ability to pay a fine, is one single reference that the judge made. And he said – excuse me – he said that there was – obviously do not have the means of paying a high fine. Under 3553A – and here in this part of the sentencing, when you look at it in context – Your Honor, the judge is stepping through the various kinds of sentences that are available, which is precisely what 3553A3 instructs the Court to look at. What are the kinds of sentences available? If the Court looks at this part of the sentencing transcript and compares it to the pre-sentence investigation report and particularly to the page that refers to the sentencing and then the financial options, which is page 445 of the excerpts of record, that is precisely where the Court is stepping through what are the kinds of sentences available. And that is where I submit that the language that Judge Lodge actually used, his inability to pay a high fine, shows that it was a permissible reference in the context of this sentencing. The Court – and I would argue that in some circumstances, once the Court has gone through its guidelines calculation and not made any adjustments based on ability or inability to pay a fine, that there are some situations where the Court can look and say, okay, I've got this, what will be this sentence of imprisonment, and I've got these other factors that I have to look at, including the nature and circumstances of the offense, the history and characteristics of the defendant, the disparity of the ability to be disparate or equally treat defendants who have been convicted of similar crimes and similar conduct. And the other factors under 3553A, that there are circumstances where a significant fine, a substantial fine, will do a better job of meeting those 3553A factors than would a substantial term of imprisonment. And I think when you look at the context of what the judge was trying to accomplish here in this sentence, and repeatedly said time and time again, I'm feeling – I'm feeling that I possibly can be, in light of the factors that it had to consider, the nature and circumstances of the offense, and the real impact that this man's crimes had on the individuals who were the recipients of all of this paper, including the false forms 8300 and the follow-up letters from the Internal Revenue Service, that when the judge looked at those and looked at what had happened in the other case involving cases involving similarly situated defendants who had pled guilty to a single count and a lesser charge in which the guidelines implicated in this case, in Mr. Molesworth's case, were not implicated, when the court looked at those things, a fine simply would not meet any of those statutory requirements. The judge recognized that he wanted to be as lenient as possible, but because of those factors, and he addressed the factors, there was considerable argument about some of the factors, he referred to those arguments in his sentencing comments, and he summed up by specifically referring to some of those factors, that in looking at this single comment, the inability to pay a high fine, the judge was saying there's simply no way I can take these other options available to me and impose a sentence on you that will meet all of these statutory goals of sentencing. And so, as the judge said, I'm perfectly comfortable with 12 months and one day. Let me ask you, you've argued the merits of it, but we have to look at our standard of review. What's the position of the government as to our standard of review of this particular issue? Your argument – excuse me, Your Honor. The government submits that the appropriate standard of review as to this particular issue, whether or not the court improperly referred to the inability to pay a high fine in the sentencing, is something that this Court should look at under the plain-error standard of review. On what? Clearly erroneous standard? Under the plain-error standard of review, is the error plain? And was there error, is it plain, and is it – does it substantially affect the rights of the defendant, Your Honor? And I would submit that under that standard, that even if this Court concludes that the error is plain, and the government submits that it is not in the context of the sentencing, that this one – the single comment to the inability to pay a fine is – which was the precise question that the Court posed in its July 10th order, the ability to pay – the Court actually said inability to pay a high fine is not plain. It's not error, but it's plain. You – your argument on whether it's plain doesn't go to outside cases, but to what the judge was trying to do in this case. Yes, Your Honor. I think as those – when we look at – I agree that there is case law that says and the standards that say you can't use socioeconomic status as a factor in determining the length of imprisonment. I mean, that's – we don't have debtor's prisons anymore. You can't impose a fine on someone knowing they're not going to be able to pay it and that they go to jail instead. I would agree that that is law. I don't think in this case that's what the judge did. I don't think that's what Judge Lodge did, was saying, you know, because you are a poor person, you have to go to prison for 12 months and a day. I think the judge got to 12 months and a day. He said, I'm not moving from there because, you know, there may be these other sentencing options available, but you can't do that. And so in order to meet the statutory purposes of sentencing, I have to stay with this 12 months and a day that is not only within the guidelines range, but meets the statutory goals of sentencing. I think under the facts of this case, there is no error. So my position would be there's no error. And even if there is error, I don't think that in this context it would be – it would be plain. I don't think that in looking at the record in this case in Judge Lodge's comment that that is, at the very least, subject to different interpretations as to what he was trying to accomplish there. And even – Kennedy. Can I ask a question to clarify here? Certainly, Your Honor. I understand your argument to be that if we took Judge Lodge's words literally as to what he would have done in calculating downward departures, he says, I think pretty plainly, that if I could – if I thought you could compensate for all of the might have departed even more. That's what he says in effect. Okay. So if we were to take that statement and say, all right, we vacate the sentence and remand to Judge Lodge and say, you can't factor into the sentencing the defendant's socioeconomic status. Is it your position that there's no other basis for departure that he could legitimately invoke in his discretion if he thought that – if he – if we instructed him that he cannot, for example, use the inability to pay a fine as a reason for going down? That's your position? He can't use his inability to pay as a reason for departing downward? Is that what your position is? So that that has to be taken off the table, which then I'm wrestling with, well, would he have then, if he'd done it right, found, you know, looked at some other reasons for increasing the downward departure? Is there anything open on remand that he could legitimately do? Not that the government is aware of, Your Honor. There were no other basis that I'm aware of that he used as a downward departure. The argument at sentencing was not over whether there should be a downward departure from the parties. It was over the correct calculation or what guidelines to use in the calculation of the – what guideline section to use in the calculation of the guidelines and what intended loss there was. The part about downward departing based on the fact that there was no actual loss came from a reference in the pre-sentence investigation report, and that is the one that Judge Lodge took up and went down nine levels, which the Court, you know, acknowledged is virtually unheard of. This was a substantial downward departure, which I think is entirely within Judge Lodge's discretion, particularly after this Court's decision in Manyweather. I think that he certainly is capable of – capable – is able to do that in his discretion. I don't think there was any other basis, no other topic of discretion that would have – would cause Judge Lodge on remand to go down. Let's suppose – let's suppose that he – there was an ability to pay here, okay? So in going through the calculation, he imposes a fine of $100,000, and then he departs downward for other reasons, but he factors in when he's going through that analysis. He's taken into account that this guy is paying a $100,000 fine. Is that permissible? No, Your Honor, and I think that that would be inappropriate looking under 994. I haven't done sentencing, but judges, don't they decide, well, I'm going to – I'm And therefore, I'm not going to sentence you to any jail time, because I – I've looked at it, and I've decided you've been punished enough, humiliation in the society, and blah, blah, blah. I'm fining you $100,000, you're going to pay $200,000 restitution, and therefore, I'll suspend any jail time. Is that impermissible? Depending, I think, on how the court does it, particularly according to this Court's decisions. I mean, it's, I think, abundantly clear after Cantwell and Zavala and several of this Court's prior decisions, that the first thing the sentencing court has to do is calculate the appropriate guidelines range, including any applicable departures. And once the Court has done that, it next turns to 18 U.S.C. 3553a. And analyzes those factors. And, of course, the guidelines are a part of that and can be the starting point in that. And I think then, when you turn to that second way of – or second part of the sentencing, second process in the sentencing, looking at the 3553a three factors, I think it is conceivable. I don't think the government would ever argue that they'd like to see it done, that the Court could say, because this significant fine is there. And that's why I think the analysis is different when you look at whether he can depart and whether he could have done it under 3553a three. I mean, the Court still has to impose a sentence that will meet those statutory considerations. And if I might just very briefly, Your Honor, I want to get back to one thing that's troubling me, and I apologize if I have not been clear enough. But the statute – this is a case where the cost of prosecution can be imposed separate from a fine, and, in fact, are supposed to be imposed. And the government didn't ask for it in this case, and the Court didn't impose it. But that's not really the inability to pay a fine. That's a – it's a separate economic factor, I understand, but that's not the same thing. A fine was a possibility in this case, as was cost of prosecution. And I think that the Court in – I mean, this Court's questions went to the inability to pay a fine, and I don't think the Court committed error there. I think the Court doesn't commit error when it refers to cost of prosecution as being a basis for downward departure, and then doesn't do it because that would have been error. All right. I just want – on the waiver issue, your argument on the sentence nowhere says that plain error review should – that we should undertake plain error review of that issue. It argues for de novo review, and to review it for reasonableness. And you do mention – I think you're referencing this issue when you say the defendant contends that because the district court departed nine levels and then expressed some regret that it could not do anything further for the defendant, the district court must have presumed that the guidelines were reasonable, and then go on to address it. But you can see you didn't argue to us that we should consider this under plain error. Correct, Your Honor. And I can see that that is what the government's position might be. And I was not referring to this argument. I have to confess that I missed this sub-argument about the inability to pay a fine and the references to the socioeconomic status, because I was so focused on, you know, the post-Zavala issues that come up on whether the – which was the thrust of Mr. Ball's argument that it – that the court treated the guidelines as presumptive in this case. And that's what the government was focusing on. In fact, when I went back and read my brief, I had not even interpreted the way the Court just did. But I think that anytime the Court, on this waiver of the waiver argument, Your Honor, that even if the government doesn't urge the application of plain error standard and I think, frankly, I've talked to our appellate coordinator, it could be argued – it could have been argued as the basis for all of this reasonableness analysis and not just on this issue as to the ability to pay a fine, because the way sentencing works now, there's no real opportunity for a defendant to get up and say, Judge, you did your 3553A analysis wrong. I've seen one judge do that, and that was Judge Tallman when he heard a case in our district. But there's just no opportunity for that. So I think in virtually every case where there's a Zavala issue presented, that the government could ask that a plain error standard be applied. I think at any rate, it is possible for this Court in its own discretion to apply the plain error standard, because what it's really getting at is what did the district – did the district court have an opportunity below to rule on the issue? And it simply did not, if we're looking at this small issue, was not brought to the honor if in fact this is what you're doing. All right. Thank you. Thank you very much, counsel. And United States v. Mosworth is submitted. And this session of the Court is adjourned for today.
judges: Wallace, Wardlaw, Fisher